Our final case for today is United States v. Oscar Orona-Ibarra. Mr. Alvarado. May it please the Court, Counsel. I think one thing that's very clear from the record, Mr. Orona was found in Texas by ICE authorities sometime in either the fall or the spring of 2013. They took a written statement from him. He admitted all the elements of the offense. They had a chronology which included the dates when he had been removed from the United States, when he had entered, why he came back. They knew about his prior convictions. They knew he was... Counsel, does any of these things matter under Rodriguez-Rodriguez? They do, Judge, to the extent that he was found. The authorities learned his identity and they learned his status as a previously removed alien and that establishes that he was found for purposes of a 1326. That's why I'm asking, is there any doubt in Rodriguez-Rodriguez that Mr. Rodriguez-Rodriguez had initially been found in Texas? That is what the defense argued, that they should have found him in Texas, but they conceded that he was not found in Texas. He was found in Wisconsin once they learned his identity and learned that he had been removed previously. The opinion in Rodriguez recites that Rodriguez-Rodriguez maintains that he was found in the Southern District of Texas. That was the argument he was making. That's right. And we said it didn't matter because it's a continuing offense and he was also found where he was arrested. If it didn't matter in Rodriguez-Rodriguez because it's a continuing offense, why would it matter? The continuing offense has to end at some point. So let me ask you this, I mean if there are distinctions from Rodriguez-Rodriguez, we need, I'm just gonna call it Rodriguez by the way, if there are distinctions from Rodriguez, we need to hear them. So one conceivable distinction seems to me is the fact that perhaps Mr. Arona was in continuous custody the whole time. So he wasn't out there wandering around the United States ready to be arrested again. And I would like to know whether that's a distinction that should make a difference or and if so, why? That absolutely, that absolutely is a distinction that should make a difference. He never took a voluntary act or a knowing act, well maybe knowing, he knowingly came into Illinois. But he didn't intentionally or into Peoria to commit an offense. So the other side of that though is you make the argument, which is one that I'm going to be discussing with counsel for the government as well, that if he's in custody then what prevents the marshals from just, you know, deciding they're ready for a Utah vacation, you know, and flying him up to Utah so they can do a little skiing while they're not worrying about court, try him in Utah, just take him anywhere. And yet Mr. Arona had a previous connection with the Central District of Illinois because he had committed a crime there and was on supervised relief. So the Central District isn't a totally random district from Mr. Arona's point of view. No, it's not a totally random district, but I'm not sure that that makes a distinction. If the marshals in your hypothetical could take him to Utah on a skiing trip, by the same token they could take him to every single district in the country and decide to leave him at one place to be prosecuted. Exactly, and actually that's another way of phrasing the question is, is the holding of Rodriguez that broad or not? And there is language Rodriguez that says, or worse, they could carry the alien into that district themselves and prosecute him there. Now maybe that's dicta, maybe it's holding, whatever, but it's a pretty expansive statement. Right, the holding in Rodriguez is not that broad. They did not consider a situation in Rodriguez like this, and also in Rodriguez the court made pains to say that if he had been found in Texas, if he had been released on personal recognizance and fled to Wisconsin, then he could be found again and charged in Wisconsin. But the court made that made it very clear if he had been released on personal recognizance, which basically exempted the situation we have here. Mr. Arona never left federal custody once he left Texas until he got to Peoria. And if anything, the Constitution tells us that he has to be prosecuted in the district where the offense was committed. You cannot commit a federal offense or any offense when you don't take a voluntary or intentional act in a particular jurisdiction. Mr. Alvarado, what's your remedy here? The remedy is the indictment should be dismissed. If Texas chooses to prosecute him, that's up to Texas. Where the district court could simply transfer the case to Texas? Is that not a permissible remedy here? No, because I'm asking that the indictment be dismissed. Why is that the correct remedy? For improper venue. In civil cases, criminal cases, isn't, why isn't it? I wasn't asking for a change of venue. I understand you're not asking for it, but why from the interests of the justice system as a whole, isn't that the appropriate remedy? Isn't, is there a criminal rule that suggests that the defendant has to agree to a transfer? Well, he has to request it. Yeah, I think that's the remedy. And we are not requesting it. And frankly, your honors, ICE also made the determination and the documents that we cited in our appendix, they were not going to prosecute him. They indicated that he should be held without bail so they could process him and remove him from the country. Now, whether they actually talked to the Texas authorities and they chose not to prosecute him, I don't know. But once he got to Peoria, after he received a time served sentence on his revocation, that's when the government chose to file the indictment. It seems to me that if we were to transfer this case to Texas, it would lead to capricious charging decisions by a district that was inclined to prosecute when the district that you wanted transfer to either didn't make any decision or didn't want to charge him. So what I'm looking at, by the way, is Rule 20A of the pending if two things happen. They're in the conjunctive. The defendant states in writing that he wants to essentially transfer and the U.S. attorneys agree. But it certainly doesn't prevent him remaining in custody under immigration custody while a new indictment is returned in the Southern District of Texas, at which point he could be transferred, still in custody, back to Texas. So there is, it's just some different form of the question. It's not hugely different. He very well could be transferred back to Texas and prosecuted there and that's where venue lies. So he's willing to take his chances at a new trial, you're telling us? Yes. You'd agree that he could be sentenced more heavily? I'm sorry? He could be sentenced more heavily in a fresh prosecution in Texas? I suppose that is possible. Does he know that? Yes, he does. All right, if you'd like to save a minute for rebuttal. I do. Mr. Baum. Thank you, Your Honor. Jason Baum on behalf of the United States. Counsel, may it please the court. So here's my issue with you. In this set of cases where the person for a 1326A offense is detained and from that point onward remains in federal custody, whether it's ICE custody or the Marshals, but all the room that leaves for Section 1329, which is the statute governing venue, because that statute says venue is proper at any place where the violation may occur or at which the person charged may be apprehended. Easy to apply in the Rodriguez situation because he wasn't in custody, he's apprehended again in Wisconsin. It seems to me a very straightforward application of the statute. But under your approach, there's no room left for 1329 because once you have him in custody, you have but to get in a car or an airplane and go to any other district of the 94 districts in the United States you want to and you say, well, now he's found here because we took him here and we're going to try him. And I have problems reading a statute out of the U.S. Code. I think there's two parts I think to that. In this case, I would agree with you that just taking a random ski trip to Utah or some kind of nefarious reason for why a jurisdiction would be chosen for venue would raise serious questions. That's not what's presented here. But it is. Is it a good faith test then for venue under the Sixth Amendment? I don't think it is in the case law. Rodriguez, Rodriguez suggests no. But that's, I mean, I think it's a different situation. He was apprehended in Wisconsin in Rodriguez and 1329 says you can have the trial there. He didn't have to go to Wisconsin. He could have stayed in Texas. He could have gone to California. He could have gone back to Mexico or wherever he wanted to go. So our ruling in Rodriguez is, look, you can be found in a lot of places. This is a continuing offense. Entirely reasonable. But under, I don't see in 1329 something that says venue is proper at any place in which the government in good faith can find a connection. It's where the person charged may be apprehended. And you think once he's apprehended in place number one, he's effectively apprehended in all 94 districts. That's correct. Which I don't think is consistent with the statute. I think this court's already rejected that the voluntariness is a legitimate consideration for venue purposes. I don't know that we had this issue squarely before us. In Herrera-Ordonez. In Herrera, though, nobody knew Herrera-Ordonez's true identity. And so my problem is, apart from the Ninth Circuit's decision in Hernandez, which went against the government on this question, are there any others in which the government established proper venue in a place where it had involuntarily taken someone when it already knew his identity and all the elements of the 1326 charge? It's not Rodriguez. It's not Herrera. Right. There is another case I'm blanking on the name right now, I believe, where they knew or maybe the argument in that case was not that they actually knew, but that they should have constructively known. I'm sorry. The should have known, we've rejected clearly. Right. That, in essence, was the Herrera-Ordonez argument. I was the district judge on that one. I had some familiarity with it. But here we've got actual knowledge, as there was in the Ninth Circuit's Hernandez opinion. There may be the facts of what the knowledge was. I believe there might have been an Eighth Circuit case on this, but I'll have to go back to that case. I don't recall any specific case where knowledge was actually known. But I don't think it matters, and here's why. In this case, he was brought to Illinois involuntarily. He was found in Texas, no dispute about that. Never leaves federal custody. He was in state custody in Texas. Never leaves custody. That's absolutely true. Never leaves custody. Comes to Illinois on the supervised release. Is released there, not released from custody, but that term's completed and he goes into custody on this charge. I think the issue would be, if he had been brought to Illinois on the supervised release, and at the end of the supervised release, they said, you're free to go, and he walked out in Peoria. He could have, under 1329, been... It would look more like Rodriguez, although I recognize where you're going with this. If they arrest him four minutes after he walks out into the parking lot, it's a little bit phony. If they actually release him and he stays in Illinois instead of going straight to the airport in Chicago and flying back to his home country, Mexico, let's say, that's a different matter. And I think it's a different matter, again, if venue is chosen for an improper purpose, but what's... But can you answer me, what's left of 1329 under your view? Is it just sort of a decoration in the U.S. Code? That 1329, that he may be found, he may be apprehended in jurisdiction. If he is released from custody, he may be apprehended in all... But in our case, what, under your theory, in this present case, Mr. Arona's case, is left of 1329? In what sense did the violation occur in the central district of Illinois? In what sense was Mr. Arona apprehended in the central district? He was found in the central district, and found in has been held to mean present in. So he was present in the central district of Illinois. But he can be... So he's present anywhere you can take him, is your view. I thought you wanted to introduce a good faith requirement. I think that there... I'm uncomfortable with anything that doesn't include a good faith. I think the government should try to do what's right. But it's not in the statute. That's the problem. I understand that. It's just not there. But I guess this is more of a policy consideration that the U.S. Attorney's Office and the federal authorities aren't going to, I would hope, aren't going to be willy-nilly going on a... picking a jurisdiction out of a hat. It's a very unattractive position. Yeah, but let's take some different contexts in which we know that at least there are good signs that the government has done some pretty careful forum shopping after 9-11, for example. And I can imagine this kind of logic applying to a different sort of statute that might be enacted, making it unlawful for people with certain ties to organizations that have financed or supported terrorist organizations, for example, to be found present in the United States. And I could... I mean, with the vigorous effort to prosecute the war on terrorism, I can easily see prosecutors in good faith saying to protect the nation, we're going to go to a forum where we think our chances of a heavy sentence are higher. I don't think all forum shopping is done in bad faith. It's not. I agree with you. That's why I'm troubled by a Sixth Amendment standard here that seems to depend upon good faith of the prosecution. I guess what I was trying to say is that you need to show... I would think the Constitution prohibits bad faith prosecution, and there's nothing to suggest... How about simply selfish... how about self-interested forum shopping when the Constitution says in the state and district where the crime shall have occurred? And the crime occurs anywhere where an illegal presence of a removed alien is found. And that's... Wherever the government takes it. And that's where this leads, right? I understand, and I think there are concerns there. There are no limits on your theory. I mean, you just have to admit that. Maybe that's what the law is, but there are no limits on your theory. It's any district, if you include this situation where the person never leaves official custody. Absolutely, there is room in this... And your opponent makes an intent argument. I don't know whether one has to intend to be in a district. What about the person who's drugged and taken across state lines and dumped in a field? They intend to be found. They were in Texas, and now suddenly they're dumped in a field in Arkansas. I mean, there are... I think the intent in this case would go to the intent to reenter the United States, and if you enter... No intent to be found. You don't know what district you're in. No intent to be there, let's put it. I certainly agree with Your Honor that our interpretation, and in Rodriguez this was acknowledged, there is room for this to be misused. And my hope is that that isn't what happens, but, yes, that is a possibility. Okay, that's fine. Unless there are any questions, I will stand on the brief. Okay, thank you. Anything further, Mr. Alvarado? No, we're both. All right, well, thank you. Thanks to both counsel. We will take the case under advisement, and the court will be in recess. Thank you.